# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES | CRIMINAL ACTION |
| v. | |
| MICHAEL GONZALEZ | NO. 02-446-01 |

DuBOIS, J.                                                                                                        March 22, 2021

# MEMORANDUM

## I.     INTRODUCTION

*Pro se* defendant, Michael Gonzalez, is an inmate at FCI Allenwood Medium. Presently before the Court are *pro se* defendant's Motion for Compassionate Release, Motion for Appointment of Counsel, and letter requesting a judicial recommendation that he be placed in a residential reentry center, community corrections facility, or halfway house ("Motion for Judicial Recommendation"). For the reasons that follow, the Motion for Compassionate Release, Motion for Appointment of Counsel, and Motion for Judicial Recommendation are denied.

## II.     BACKGROUND

### A.  Criminal Conduct

On June 20, 2005, *pro se* defendant pled guilty to one count of conspiracy to distribute methamphetamine, one count of attempted possession with intent to distribute methamphetamine, and one count of unlawful use of a communication facility. On September 27, 2005, *pro se* defendant was sentenced to, *inter alia*, a mandatory minimum sentence of 240 months' imprisonment.

*Pro se* defendant has served approximately 191 months in custody, which, with good time credit of twenty-three months, is approximately 214 months. The Government reports that *pro se* defendant's anticipated release date is August 1, 2022. Gov't Resp. at 6.

### B. Present Motions

#### 1. Motion for Compassionate Release

On December 21, 2020, *pro se* defendant filed the Motion for Compassionate Release. In support of the motion, *pro se* defendant states that he is at increased risk of contracting COVID-19 because of his obesity, asthma, and "nodules in [his] left lung that are being monitored for cancer." Def.'s Mot. at 6.

*Pro se* defendant's medical conditions are documented in his medical records. Def.'s Med. R., Document No. 369. According to his medical records, he is five feet, five inches tall, and weighs 211 pounds. *Id.* at 70. His height and weight place his body mass index ("BMI") at approximately 35. *Pro se* defendant's asthma is "intermittent," "well controlled," and "does not interfere with his activity level." *Id.* at 6, 125. Further, his medical records include a report dated June 25, 2019, which provides that he has a "[s]table 8mm nodule in the left upper lung field dating back to November 7, 2017." *Id.* at 178. The report concludes that "[a]fter 2 years of stability, no further follow-up [on the nodule] is necessitated." *Id.* His medical records also state that he suffers from hyperlipidemia and has a history of smoking cigarettes. *Id.* at 81.

*Pro se* defendant claims "COVID is at an all time high in [his] housing unit" at FCI Allenwood Medium. Def.'s Mot. at 1. On November 24, 2020, *pro se* defendant tested positive for COVID-19. Def.'s Med. R., Document No. 369 at 100. His medical records include a report dated December 3, 2020, less than two weeks after he tested positive for COVID-19, which states that he was "interviewed at [his] cell and denies and medical concerns at this time." *Id.* at 71. He "report[ed] feeling well without [a] cough, shortness of breath, or general malaise." *Id.*

On March 4, 2021, the Government responded to *pro se* defendant's Motion for Compassionate Release. The Motion for Compassionate Release is thus ripe for decision.

2. <u>Motion for Appointment of Counsel</u>

On November 9, 2020, *pro se* defendant filed the Motion for Appointment of Counsel. Document No. 361. By Order dated November 13, 2020, the Court directed the Federal Community Defender Office to "notify the Court whether it will seek appointment to represent defendant, Michael Gonzalez, for the purpose of litigating a compassionate release motion." Document No. 362 at 2. On February 1, 2021, the Federal Community Defender Office notified the Court that it will not file a motion for compassionate release on *pro se* defendant's behalf.

3. <u>Motion for Judicial Recommendation</u>

On March 10, 2021, *pro se* defendant filed the Motion for Judicial Recommendation. Document No. 372. In support of the motion, he argues that placement in a residential reentry center ("RRC"), community corrections facility, or halfway house "would provide [him] the opportunity to slowly become reacclimated back into society."[1] *Id*. at 1. He also claims he "was sent to [FCI Allenwood Medium] to take part and participate" in a residential drug abuse program, but the program is "backed-up" due to the COVID-19 pandemic. *Id*.

**III.   DISCUSSION**

    **A. Applicable Law**

*Pro se* defendant seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018). Section 3582(c)(1)(A)(i) permits a federal prisoner to petition a court for compassionate release for "extraordinary and compelling reasons" after first filing a request for compassionate release with

---

[1] *Pro se* defendant uses the terms residential reentry center, community corrections facility, and halfway house interchangeably in his Motion for Judicial Recommendation. The Court notes that "Residential Reentry Center is another term for the facilities commonly known as halfway houses and previously commonly referenced as Community Correction Centers." *Bailey v. Mosley*, No. 16-2942, 2017 WL 2983924, at *1 n.1 (D.S.C. June 21, 2017), *report and recommendation adopted*, 2017 WL 2974169 (D.S.C. July 12, 2017).

the prison warden.² 18 U.S.C. § 3582(c)(1)(A)(i).  Generally, "extraordinary" means "[b]eyond what is usual, customary, regular, or common" and a "compelling need" is a "need so great that irreparable harm or injustice would result if it is not met." *United States v. Rodriguez*, 451 F. Supp. 3d 392, 401 (E.D. Pa. 2020) (quoting *Extraordinary*, Black's Law Dictionary (11th ed. 2019)).

"Extraordinary and compelling reasons," for purposes of § 3582(c)(1)(A)(i), were previously defined by a policy statement in § 1B1.13 of the United States Sentencing Guidelines, which cites the (A) medical condition, (B) age, (C) family circumstances of the defendant, and, (D) "reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)," as determined by the Bureau of Prisons ("BOP").  U.S.S.G. § 1B1.13 cmt. n.1(A)-(D).  This policy statement, which was adopted before the First Step Act, does not account for the fact that defendants may now file their own motions for compassionate release.³  Thus, as a majority of district courts and all of the courts of appeals that have spoken on the issue have held, § 1B1.13 is not an "applicable policy statement" in the context of defendant-filed motions.⁴  *See United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020) ("join[ing] three other federal courts of appeals that recently have considered this question"); *United States v. Pollard*, No. 10-633-1, 2020 WL 4674126, at *5 n.5 (E.D. Pa. Aug. 12, 2020) (collecting district court cases).  Based on this authority, the Court concludes that when a defendant files a motion for

---

[2] On November 12, 2020, *pro se* defendant submitted a request for compassionate release to the Warden of FCI Allenwood Medium.  The parties do not dispute that *pro se* defendant has exhausted his administrative remedies.

[3] The Sentencing Commission currently lacks the quorum required to amend the Sentencing Guidelines.  U.S. Sentencing Comm'n, Annual Report 2–3 (2019), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2019/2019-Annual-Report.pdf.  Thus, as many courts have recognized, the Guidelines have not been updated in response to the First Step Act.  *See, e.g.*, *United States v. Brooker,* 976 F.3d 228, 234 (2d Cir. 2020).

[4] The Court notes that "[t]he existing policy statement continues to govern BOP-filed motions for compassionate release."  *McCoy*, 981 F.3d at 282 n.7 (citing *United States v. Jones*, 980 F.3d 1098, 1109–10 (6th Cir. 2020)).

compassionate release on his own behalf—as *pro se* defendant has done in this case—a district court may exercise its discretion to define "extraordinary and compelling reasons."

The Third Circuit has held that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Moreover, "the existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner." *United States v. Roeder*, 807 F. App'x 157, 161 n.16 (3d Cir. 2020). Therefore, a general fear of contracting COVID-19 alone does not satisfy the "extraordinary and compelling reasons" requirement of the statute. *United States v. Ramirez-Ortega*, No. 11-251-07, 2020 WL 4805356, at *2 (E.D. Pa. Aug. 18, 2020) (DuBois, J). However, an inmate may be able to establish extraordinary and compelling circumstances when the inmate suffers from a medical condition that the CDC has identified as a risk factor for COVID-19. *Rodriguez*, 451 F. Supp. 3d at 402.

"Not every defendant who presents a qualifying extraordinary and compelling reason is entitled to relief under Section 3582(c)(1)(A)." *United States v. Babbitt*, No. 18-384, 2020 WL 6153608, at *9 (E.D. Pa. Oct. 21, 2020). Before granting compassionate release, a court must consider (1) whether the defendant would present a danger to the community under 18 U.S.C. § 3142(g); and (2) whether a sentence reduction would be consistent with the factors enumerated in 28 U.S.C. § 3553(a). *Babbitt*, 2020 WL 6153608, at *9. Ultimately, compassionate release is appropriate only when there are extraordinary and compelling circumstances, the defendant's release would not pose a danger to the community, and release would be consistent with the § 3553(a) factors.

B. **Motion for Compassionate Release**

*Pro se* defendant argues that compassionate release is warranted based on his medical conditions and the conditions at FCI Allenwood Medium.

As a preliminary matter, the Government acknowledges that "there have been outbreaks" of COVID-19 at FCI Allenwood Medium. Gov't Resp. at 19. However, "an outbreak at the defendant's correctional institution," standing alone, does not satisfy the extraordinary and compelling reasons requirement. *United States v. Claude*, No. 12-33, Document No. 515 at 4 (E.D. Pa. Dec. 8, 2020) (DuBois, J.). The Court thus considers whether, in light of the conditions at FCI Allenwood Medium, *pro se* defendant's medical conditions present extraordinary and compelling reasons warranting compassionate release. As discussed *supra*, *pro se* defendant claims he is at increased risk of contracting COVID-19 because of his obesity, asthma, and "nodules in [his] left lung that are being monitored for cancer." Def.'s Mot. at 6.

The CDC has advised that people who have cancer or a BMI above 30 "are at increased risk of severe illness from the virus that causes COVID-19." CDC, People Who Are at Higher Risk for Severe Illness, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (accessed Mar. 16, 2021). Similarly, the CDC has reported that people who have moderate-to-severe asthma "might be at an increased risk for severe illness from the virus that causes COVID-19." *Id*.

*Pro se* defendant has not demonstrated that he has cancer or moderate-to-severe asthma. Although he claims that a nodule in his left lung is "being monitored for cancer," he cites no portion of his medical records, and the Court has found none, stating that this nodule is cancerous. Further, his medical records include a report dated June 25, 2019, stating that the nodule has been stable for two years and "no further follow-up is necessitated." Def.'s Med. R.,

6

Document No. 369 at 178.  Similarly, his medical records state that his asthma is "intermittent," "well controlled," and "does not interfere with his activity level."  *Id*. at 6, 125.

It is undisputed that *pro se* defendant has a BMI of approximately 35.  However, he has identified no health problems related to his weight.  Further, he denied having any medical concerns on December 3, 2020, less than two weeks after he tested positive for COVID-19.  Courts have routinely denied motions for compassionate release in similar circumstances.  *See, e.g., United States v. Calloway*, No. 12-540, 2020 WL 7480295, at *1 (E.D. Pa. Dec. 18, 2020) (denying release where defendant at FCI Allenwood Medium suffered from obesity, tested positive for COVID-19, and "was asymptomatic"); *United States v. Moore*, No. 12-349, 2020 WL 6146610, at *6 (E.D. Cal. Oct. 20, 2020) (denying release where defendant had BMI of 32.1, tested positive for COVID-19, and "was asymptomatic"); *United States v. Santiago*, No. 92-563, 2020 WL 4926470, at *3 (E.D.N.Y. Aug. 20, 2020) (denying release where defendant had BMI of 35.9, tested positive for COVID-19, and "had no symptoms of the virus").

*Pro se* defendant's medical records also state that he suffers from hyperlipidemia and has a history of smoking cigarettes.  He does not argue that hyperlipidemia constitutes an extraordinary and compelling reason warranting compassionate release, and courts have held that it does not.  *See, e.g., United States v. Moldover*, No. 14-637, 2020 WL 6731111, at *10 (E.D. Pa. Nov. 13, 2020).  As to *pro se* defendant's history of smoking, he has been in federal custody since 2005, where smoking is banned.  On the present state of the record, without any argument from *pro se* defendant regarding his history of smoking, and there is none, the Court concludes that this issue does not present an extraordinary and compelling reason warranting compassionate release.  *United States v. Jones*, No. 02-778, 2020 WL 7640944, at *3 (E.D. Pa. Dec. 23, 2020) (denying release where defendant "provides no detail regarding his tobacco

7

usage, presents no ailments associated with smoking and has been in federal prison since 2011, where smoking is banned").

For the foregoing reasons, the Court concludes that *pro se* defendant has not presented an extraordinary and compelling reason warranting compassionate release. Therefore, the Court need not address the § 3553(a) factors or consider whether *pro se* defendant would present a danger to the community under § 3142(g) upon his release.

### C. Motion for Appointment of Counsel

In his Motion for Appointment of Counsel, *pro se* defendant argues that the Court should appoint him counsel to present his request for compassionate release because "there is an active COVID-19 outbreak at the facility [he is] housed at and [his] life is in imminent danger." Document No. 361 at 1.

In determining whether to appoint counsel in compassionate release cases, courts must first determine whether the defendant's claim "has some merit in fact and law." *Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993). If it does, the Court must then consider the following factors set forth by the United States Court of Appeals for the Third Circuit in *Tabron*: (1) the defendant's ability to present his or her own case; (2) the difficulty of the particular legal issues; (3) the degree to which factual investigation will be necessary and the ability of the defendant to pursue the investigation; (4) the defendant's capacity to retain counsel on his or her own behalf; (5) the extent to which the case is likely to turn on credibility determinations; and (6) whether the case will require testimony from expert witnesses. *Id.* at 155–57.

For the reasons stated in § III.B. of this Memorandum, *supra*, *pro se* defendant's request for compassionate release does not have "some merit in fact and law." *Id.* at 155. He has not presented an extraordinary and compelling reason warranting compassionate release.

Even if *pro se* defendant's claim had merit in fact or law, the *Tabron* factors do not support appointment of counsel. The first and second factors weigh heavily against appointment of counsel because *pro se* defendant has ably presented his Motion for Compassionate Release, and the legal issues raised in that motion are straightforward. Further, the third, fifth, and sixth factors weigh against appointment of counsel because no investigation is needed, credibility is not at issue, and expert testimony is not required in this case.[5]

For the foregoing reasons, the Court denies *pro se* defendant's Motion for Appointment of Counsel.

### D. Motion for Judicial Recommendation

In his Motion for Judicial Recommendation, *pro se* defendant requests that the Court recommend he be placed in an RRC, community corrections facility, or halfway house. Document No. 372 at 1. In support of the motion, he argues that placement in an RRC, community corrections facility, or halfway house "would provide [him] the opportunity to slowly become reacclimated back into society." *Id*.

Under 18 U.S.C. § 3621(b), the BOP has the discretion to "designate the place of the prisoner's imprisonment." Under 18 U.S.C. § 3624(c)(1), this may include up to twelve months of placement in an RRC, community corrections facility, or halfway house. In determining "the place of the prisoner's imprisonment," the BOP considers:

---

[5] As to the fourth factor, *pro se* defendant has not stated whether he is unable to retain counsel. In view of the fact that he is currently incarcerated, the Court assumes that this factor weighs in *pro se* defendant's favor.

9

  (1)  the resources of the facility contemplated;
  (2)  the nature and circumstances of the offense;
  (3)  the history and characteristics of the prisoner;
  (4)  any statement by the court that imposed the sentence—
    (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
    (B) recommending a type of penal or correctional facility as appropriate; and
  (5)  any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b).

Under the statute, the Court has discretion to recommend placement in an RRC, community corrections facility, or halfway house for *pro se* defendant, but declines to do so in this case. The BOP is most familiar with *pro se* defendant's individual circumstances and its own resources. Thus, the BOP is in the best position to determine an appropriate placement for *pro se* defendant.

For the foregoing reasons, the Court denies *pro se* defendant's Motion for Judicial Recommendation.

## IV. CONCLUSION

For the foregoing reasons, *pro se* defendant's Motion for Compassionate Release, Motion for Appointment of Counsel, and Motion for Judicial Recommendation are denied. An appropriate order follows.